**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**Beaufort Division**

| | |
|---|---|
| LISA ABSHIRE POJANO,<br><br>Plaintiff,<br><br>v.<br><br>QUERALT, INC.,<br>QUERALT SOLUTIONS, LLC, and<br>DOMINIC RAPINI, individually,<br><br>Defendants. | Civil Action No. 9:26-cv-04840-BHH<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff Lisa Abshire Pojano, by and through her undersigned attorneys, alleges upon her knowledge, and upon information and belief as to the acts of Defendants and of others, as follows:

## THE PARTIES

1. Plaintiff Lisa Abshire Pojano is an adult individual residing at 52 Gun Club Drive, Sheldon, South Carolina 29941. Plaintiff is a citizen of the State of South Carolina.

2. Upon information and belief, Defendant Queralt, Inc. is a corporation organized under the laws of the State of Connecticut with its principal place of business at 250 State Street, North Haven, Connecticut. Queralt, Inc. is Plaintiff's counterparty to the *Memorandum of Understanding* at issue in this action.

3. Upon information and belief, Defendant Queralt Solutions, LLC is a limited liability company organized under the laws of the State of Connecticut with its headquarters in Wallingford, Connecticut. Upon information and belief, no member or manager of Queralt Solutions, LLC is a citizen of South Carolina.

4. Upon information and belief, Defendant Dominic Rapini is an adult individual and a citizen of the State of Connecticut. At all relevant times, Mr. Rapini has served as the Chief Executive Officer of both Queralt, Inc. and Queralt Solutions, LLC. Plaintiff asserts Count VII of this Complaint against Mr. Rapini in his individual capacity.

5. Plaintiff is not now, and has never been, a member of Queralt Solutions, LLC. No operating agreement, unit certificate, or Internal Revenue Service Schedule K-1 with respect to any membership interest in Queralt Solutions, LLC has ever been prepared, executed, or delivered to Plaintiff, notwithstanding the recognition of certain in-kind units attributed to Plaintiff on the company's own capitalization summary, as alleged below.

6. At all relevant times, the corporate Defendants operated as a single enterprise under common ownership and control, as more fully alleged below.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between Plaintiff, a citizen of South Carolina, and each Defendant, each of which is a citizen of Connecticut, and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

8. The amount in controversy is satisfied by, among other things: (a) unpaid compensation of $58,466.46 owed under the *Memorandum of Understanding* (or, in the alternative, $14,852.00 in cash together with the value of 43,000 Class A units of Queralt Solutions, LLC); (b) the reasonable value of thousands of hours of additional, documented, and uncompensated work performed by Plaintiff for Defendants' benefit; and (c) the value of the intellectual property at issue in this action, which Plaintiff estimates at not less than $80,000.00 and potentially as much as $2,000,000.00.

9. This Court has personal jurisdiction over Defendant Rapini. Mr. Rapini purposefully directed his conduct toward South Carolina: he negotiated and executed the *Memorandum of Understanding* with Plaintiff, a South Carolina resident, which Plaintiff countersigned in Sheldon, South Carolina; he transmitted his equity and compensation assurances to Plaintiff in South Carolina; he supervised, approved, and accepted Plaintiff's performance rendered from South Carolina; and he issued the August 24, 2026 termination letter to Plaintiff in South Carolina. His conduct satisfies the South Carolina long-arm statute, S.C. Code Ann. § 36-2-803, and the exercise of jurisdiction comports with due process.

10. Venue is proper in this District and in the Charleston Division pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District and Division, where Plaintiff resides, executed the *Memorandum of Understanding*, and performed the work at issue. Plaintiff's residence and place of performance, Sheldon, South Carolina, lies within the Charleston Division of this District.

11. This Court has jurisdiction to enter a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

12. The *Memorandum of Understanding* is silent as to choice of law. Plaintiff executed it in Sheldon, South Carolina; Mr. Rapini executed it in Connecticut; and the fully executed, countersigned counterparts were exchanged between the parties by electronic mail. Under South Carolina's choice-of-law rules and the principles of the Restatement (Second) of Conflict of Laws § 188, South Carolina has the most significant relationship to the transaction and the parties: Plaintiff resided in and performed the contract in South Carolina, the subject matter of the contract was Plaintiff's services rendered from South

Carolina, and the contract itself identifies Plaintiff as "of South Carolina." Accordingly, South Carolina substantive law governs Plaintiff's contract-based claims.

## FACTUAL BACKGROUND

### A. The *Memorandum of Understanding*

13. On or about July 21, 2025, Plaintiff and Queralt, Inc. executed the Memorandum of Understanding (the "MOU"), labeled "Updated 7/21/2025," formalizing Plaintiff's engagement as a strategic product development and cybersecurity consultant, with the position title "Executive Officer - Product Development and Cybersecurity," reporting to the Chief Executive Officer.

14. Plaintiff executed the MOU at her residence in Sheldon, South Carolina. Mr. Rapini executed the MOU in Connecticut. The fully executed, countersigned counterparts were then exchanged between the parties by electronic mail.

15. The MOU expressly identifies Plaintiff as "of South Carolina" and provides that Plaintiff would perform strategic product development, cybersecurity leadership, and go-to-market work for Queralt's suite of products, including its flagship QX.509 cybersecurity product and the Q-Scan product family.

16. The MOU provides that Plaintiff's compensation would be at the rate of $100.00 per hours, with approved hours of twenty (20) hours per week ($2,000.00 per week), effective the week of October 28, 2024, and (40) hours per week ($4,000.00 per week), effective Jan 1, 2026.

17. The MOU further provides that "[r]esidual lookback compensation will be resolved upon receipt of direct funding or execution of a signed structured investment agreement and not contingent on Lisa's status with the company," and that "[p]ayment is not contingent upon

Lisa's continued engagement at the time funding is received, provided contributions are documented and approved by the CEO."

18. The MOU also provides that, upon successful funding, "Lisa will be granted a vested equity stake in Queralt, Inc., the specifics of which will be defined once investor funding is secured."

19. The MOU is silent as to any assignment of intellectual property. It contains no work-made-for-hire provision, no intellectual property assignment clause, and no requirement that Plaintiff execute any such instrument.

**B. Plaintiff's Performance and Intellectual Property**

20. Beginning the week of October 28, 2024, and continuing through August 2026, Plaintiff performed the contracted services from her residence in Sheldon, South Carolina, including product roadmaps, product requirement documents ("PRDs"), enterprise user interface and experience design, Microsoft integration architecture, responses to requests for proposals, compliance and certification frameworks, and investor-facing materials.

21. Among other things, Plaintiff solely conceived, designed, and invented: (a) a "Unified Authenticator" system permitting authentication across multiple applications without the need for software development kits ("SDKs"); and (b) a centralized revocation tool, which is a silent duress mechanism or framework by which an enterprise can block an individual's access to enterprise-level systems (collectively, the "Pojano IP").

22. The Pojano IP is incorporated into, and is central to, Defendants' QX.509 FIDO-PKI Authenticator platform, which Defendants have promoted to prospective investors as patent-protected and as the core asset of their business.

23. Plaintiff's contributions were documented and approved by Defendants' Chief Executive Officer, Dominic Rapini, as contemplated by the MOU.

24. In addition to the approved twenty (20) hours per week ($2,000.00 per week), and (40) hours per week ($4,000 per week), effective Jan 1, 2026, Plaintiff performed thousands of hours of additional, documented work for Defendants' benefit, for which no compensation has been paid.

**C. The Funding Condition Was Satisfied**

25. The MOU conditioned compensation on "sufficient investor funding."

26. On or about July 28, 2026, Defendants prepared a Capitalization Summary "Prepared for Prospective Investors" for Queralt Solutions, LLC, reporting total capital raised of $888,400.00, including $678,400.00 in cash for units and $210,000.00 in convertible notes.

27. By Defendants' own investor-facing documents, the MOU's funding condition was satisfied no later than July 28, 2026. Defendants have nevertheless refused to pay the compensation owed to Plaintiff.

**D. The Capitalization Summary and the 43,000 Units**

28. The same Capitalization Summary recognizes, under the heading "Units Issued In Kind (Non-Cash)," the entry "Lisa Pojano - Services: 43,000" Class A Common Units, representing 3.99% of the company, and reflecting a services-to-capital conversion of $43,614.46.

29. The Capitalization Summary also states that "No employee option pool is reflected," directly contradicting Mr. Rapini's repeated assurances to Plaintiff during 2024 through 2026 that an executive equity pool was in place and actively being structured.

30. No operating agreement, unit certificate, or Schedule K-1 with respect to the 43,000 units has ever been delivered to Plaintiff. Defendants cannot simultaneously recognize Plaintiff's units on an investor-facing capitalization table and deny her ownership interest.

**E. The Termination**

31. From August 10, 2026, through August 14, 2026, Plaintiff demanded in writing that Defendants honor their compensation and equity commitments, including a written equity framework.

32. On August 24, 2026 - five weeks after Plaintiff's July 17, 2026 compliance memorandum and her withdrawal from a proposed transaction with Mohamad Al Akari / Kingdom Wealth Funds SPC, and ten days after her written equity demands - Defendants, by a letter signed by Dominic Rapini as "CEO, Queralt Solutions," purported to terminate the MOU "with immediate effect," despite the fact that the MOU requires the "mutual consent" of Plaintiff.

33. The termination letter was issued on Queralt Solutions LLC letterhead and purported to terminate the MOU between Plaintiff and Queralt, Inc., further evidencing that Defendants operate as a single enterprise under common control.

34. The termination letter admits that "there remains an open matter regarding any residual lookback compensation you may be due for work performed during Phase 1."

35. The termination letter unilaterally asserts that Plaintiff's relationship with the company was as a paid consultant and that "all the work you have produced is work-made-for-hire and the Company's property." That assertion is false: the MOU contains no work-made-for-hire or intellectual property assignment provision, and no written assignment of any intellectual property from Plaintiff to Defendants exists.

36. On August 25, 2026, Plaintiff requested complete executed copies of any agreements referenced in Defendants' reaffirmation demand. Defendants have not produced any such agreement.

37. As introduced above, the MOU provides for termination by mutual consent. Defendants' unilateral termination breached that provision as well.

**F. Retaliatory Escalation**

38. Upon information and belief, David Cook is the Chairman of the Board of Queralt Solutions, LLC and, directly or through related parties, among the largest holders of its equity. Mr. Cook is not currently named as a defendant in this action.

39. In or about early October 2026, Mr. Rapini and Mr. Cook caused a complaint to be made to the Wallingford, Connecticut Police Department (Case No. 26-27672) alleging that Plaintiff had committed "extortion." To Plaintiff's knowledge and belief, the responding officer determined the matter to be a civil dispute and no further action has been taken regarding Case No. 26-27672.

40. The police complaint was baseless and retaliatory and was made within weeks of Plaintiff's demands for payment and equity and her retention of counsel. It is further evidence of Defendants' bad faith.

**G. Alter Ego and Single Enterprise**

41. Queralt, Inc. contributed the intellectual property underlying the QX.509 platform into Queralt Solutions, LLC in exchange for 170,600 Class A Common Units, representing 15.82% of the company.

42. As heretofore noted, Mr. Rapini serves as Chief Executive Officer of both entities and signed the termination letter on behalf of Queralt Solutions, LLC purporting to terminate

Queralt, Inc.'s contract, and Mr. Cook is Chairman of the Board of Queralt Solutions, LLC and, directly or through related parties, among its largest equity holders.

43. Defendants commingle management, operations, and assets; hold themselves out to the public and to investors as a single enterprise trading under the name "Queralt"; and have used the two-entity structure in an attempt to shelter contract obligations and assets from one another. Plaintiff pleads alter ego and single-enterprise allegations so that neither corporate Defendant may shelter obligations or assets behind the other. At all relevant times, Queralt, Inc. and Queralt Solutions, LLC operated as a single enterprise under the unified control of Mr. Rapini, with commingled operations, personnel, and assets. Both entities are the alter egos of Mr. Rapini, who dominates and controls them such that honoring the corporate form would sanction fraud or injustice. Plaintiff is entitled to pierce the corporate veil and hold all Defendants, including Mr. Rapini individually, jointly and severally liable for the obligations alleged herein.

**COUNT I**

**BREACH OF CONTRACT**

44. Plaintiff realleges the allegations of the preceding paragraphs as if fully set forth herein, not inconsistent herewith.

45. The MOU is a valid and binding contract between Plaintiff and Queralt, Inc. Plaintiff performed all obligations required of her thereunder, and all conditions to Defendants' payment obligations were satisfied, including the investor-funding condition, no later than July 28, 2026.

46. Defendants breached the MOU by, among other things: (a) failing and refusing to pay Plaintiff the lookback compensation due under the MOU, in the amount of $58,466.46,

which amount includes the $43,614.46 services-to-capital conversion reflected on Defendants' own capitalization summary (or, in the alternative, $14,852.00 in cash together with delivery to Plaintiff of the 43,000 Class A units recognized on that summary); (b) failing and refusing to compensate Plaintiff for thousands of additional documented hours of work performed for Defendants' benefit; (c) purporting to terminate the MOU unilaterally and without the mutual consent required by the MOU; and (d) failing and refusing to grant Plaintiff the vested equity stake promised upon funding.

47. As a direct and proximate result of Defendants' breach, Plaintiff has been damaged in amounts to be proven at trial, but not less than $58,466.46, together with the value of her uncompensated additional hours, her promised equity stake, and the Pojano IP.

## COUNT II

## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

48. Plaintiff realleges the allegations of the preceding paragraphs as if fully set forth herein, not inconsistent herewith.

49. At all relevant times, an implied covenant of good faith and fair dealing was part of the parties' contractual relationship, requiring Defendants to refrain from acts that would impair or destroy Plaintiff's rights to receive the fruits of the MOU.

50. Defendants breached the implied covenant by, among other things: (a) terminating the MOU on pretextual grounds five weeks after Plaintiff's good-faith compliance memorandum and withdrawal from the Al Akari / Kingdom Wealth Funds transaction, and ten days after her written equity demands; (b) asserting a false work-made-for-hire theory to deny Plaintiff's compensation and intellectual property rights; (c) causing a baseless "extortion" complaint to be made to the Wallingford, Connecticut Police Department; and

(d) using the termination and accompanying settlement demands to extort releases of Plaintiff's claims without payment.

51. Defendants' conduct was willful, malicious, and in reckless disregard of Plaintiff's rights, entitling Plaintiff to compensatory damages and, to the extent available under applicable law, punitive or exemplary damages.

## COUNT III

## *QUANTUM MERUIT* / UNJUST ENRICHMENT

52. Plaintiff realleges the allegations of the preceding paragraphs as if fully set forth herein, not inconsistent herewith.

53. Alternatively, and to the extent the MOU is found not to govern some or all of Plaintiff's services or the Pojano IP, Plaintiff pleads this Count in the alternative.

54. Plaintiff conferred substantial benefits upon Defendants, including thousands of hours of skilled professional services and the Pojano IP, which Defendants knowingly and voluntarily accepted and continue to accept and use in their QX.509 platform, their investor-facing materials, and their capitalization, including the recognition of in-kind units attributed to Plaintiff's services.

55. Defendants have failed and refused to pay the reasonable value of those benefits. Under the doctrine of quantum meruit and the principles of unjust enrichment, Defendants have been and will continue to be unjustly enriched at Plaintiff's expense unless this Court awards restitution.

56. The reasonable value of the benefits conferred is not less than $80,000.00 and may be as much as $2,000,000.00 for the Pojano IP, together with the reasonable value of Plaintiff's uncompensated services, in an amount to be proven at trial.

## COUNT IV

## PROMISSORY ESTOPPEL

57. Plaintiff realleges the allegations of the preceding paragraphs as if fully set forth herein, not inconsistent herewith.

58. During 2024 through 2026, and in addition to the MOU's express promise, Mr. Rapini, on behalf of Defendants, repeatedly and specifically assured Plaintiff that she would receive a meaningful, vested, founder-tier equity stake, including assurances that an executive equity pool was in place and actively being structured.

59. Plaintiff reasonably relied on those promises by performing years of skilled services at a reduced and substantially below-market cash arrangement, by deferring her compensation demands, and by contributing the Pojano IP to Defendants' platform.

60. Defendants' assurances were never honored; their own investor-facing capitalization summary reflects no employee option pool and no equity grant to Plaintiff.

61. Injustice can be avoided only by enforcement of the promise. Plaintiff is entitled to the promised equity stake, or its value, in an amount to be proven at trial.

## COUNT V

## DECLARATORY JUDGMENT REGARDING INTELLECTUAL PROPERTY OWNERSHIP

62. Plaintiff realleges the allegations of the preceding paragraphs as if fully set forth herein, not inconsistent herewith.

63. An actual, justiciable controversy exists between the parties concerning the ownership of the Pojano IP: Defendants' August 24, 2026 termination letter asserts that all work produced by Plaintiff was "work-made-for-hire" and the company's property, while Plaintiff asserts that she owns the Pojano IP.

64. Plaintiff was at all relevant times an independent contractor, not an employee of Defendants. The Pojano IP is not a work made for hire under 17 U.S.C. § 101: no instrument signed by Plaintiff designates the work as a work made for hire, and no written assignment of the Pojano IP exists. Likewise, under settled principles of federal patent law, rights in inventions vest in the inventor absent an express written assignment.

65. Accordingly, Plaintiff is entitled to a judgment declaring: (a) that Plaintiff owns the Pojano IP, including the Unified Authenticator system and the centralized revocation tool; (b) that the Pojano IP is not work-made-for-hire and is not the property of Defendants; (c) that no assignment of the Pojano IP to Defendants exists or has ever existed; (d) in the alternative only, and solely in the event the Court finds any license was granted, that Defendants hold at most an implied, non-exclusive, non-transferable, royalty-incurring license to use the Pojano IP, and that no such license was in fact granted, as alleged in Count VIII, *infra*; and (e) that Defendants must account to Plaintiff for their past and continuing use of the Pojano IP.

## COUNT VI

## ACCOUNTING, CONSTRUCTIVE TRUST, AND SPECIFIC PERFORMANCE

66. Plaintiff realleges the allegations of the preceding paragraphs as if fully set forth herein, not inconsistent herewith.

67. In the alternative to her claim for the $43,614.46 included within the $58,466.46 alleged in Count I, and on the theory that the 43,000 Class A units recognized on Defendants' July 28, 2026 Capitalization Summary were validly issued to Plaintiff, Plaintiff is entitled to a constructive trust over, and specific performance of the delivery of, those units, together

with unit certificates, an operating agreement, all applicable Schedules K-1, and all distributions, credits, and rights appurtenant thereto.

68. In the further alternative, if the 43,000 units were never validly issued, then the recognition of those units on Defendants' investor-facing capitalization summary was illusory, and the $43,614.46 remains an unpaid cash obligation owed to Plaintiff.

69. In either alternative, Plaintiff is entitled to a full accounting of Defendants' capitalization records, unit register, and tax reporting with respect to the units attributed to her.

**COUNT VII**

**FRAUDULENT INDUCEMENT AS TO DEFENDANT DOMINIC RAPINI**

70. Plaintiff realleges the allegations of the preceding paragraphs as if fully set forth herein, not inconsistent herewith.

71. This Count is asserted against Defendant Dominic Rapini in his individual capacity.

72. From on or about late 2024 through July 2026, in electronic mail messages, telephone calls, and video conferences directed to Plaintiff at her residence in Sheldon, South Carolina, and in repeated in-person and written communications, Mr. Rapini represented to Plaintiff that: (a) an executive equity pool was "in place and actively being structured"; (b) Plaintiff would receive a meaningful, vested, founder-tier equity stake in Queralt upon the securing of investor funding; and (c) her equity position would be formalized in writing once funding was secured.

73. These representations were material to Plaintiff: they concerned the core compensation for her engagement, alongside the modest cash rate set by the MOU, and were made to induce Plaintiff to continue performing services, to defer her compensation demands, and to contribute her intellectual property - including the Pojano IP - to Defendants' platform.

74. At the time he made these representations, Mr. Rapini knew they were false, or made them with reckless disregard for their truth. The Capitalization Summary prepared under his direction for prospective investors, dated July 28, 2026, states that "No employee option pool is reflected," and reflects no equity grant, reserved interest, or option pool from which Plaintiff's promised stake could issue.

75. Mr. Rapini made the representations with the intent that Plaintiff act in reliance upon them, and Plaintiff reasonably and justifiably relied upon them by performing thousands of hours of skilled services at a below-market cash rate, by deferring her compensation and equity demands through 2024, 2025, and the first half of 2026, and by contributing the Pojano IP to Defendants' QX.509 platform.

76. As a direct and proximate result of Mr. Rapini's fraudulent inducement, Plaintiff has been damaged in an amount to be proven at trial, including the value of the promised equity stake, the reasonable value of her uncompensated services, and the value of the Pojano IP, in an amount of not less than $80,000.00.

77. Mr. Rapini's conduct was willful, wanton, and in reckless disregard of Plaintiff's rights, entitling Plaintiff to punitive damages in an amount sufficient to punish him and to deter others like him.

## COUNT VIII

## INFRINGEMENT OF PLAINTIFF'S INTELLECTUAL PROPERTY AND REQUEST FOR PRELIMINARY AND PERMANENT INJUNCTION

78. Plaintiff realleges the allegations of the preceding paragraphs as if fully set forth herein, not inconsistent herewith.

79. Plaintiff is the sole owner of the Pojano IP. No license, assignment, or other authorization – express or implied – has ever been granted to any Defendant to use the Pojano IP.

80. Defendants are using, and intend to continue using, the Pojano IP in the QX.509 platform and in marketing to prospective investors, without Plaintiff's authorization and without compensation.

81. Plaintiff has no adequate remedy at law for this ongoing unauthorized use. Defendants' unpaid use of the Pojano IP causes Plaintiff irreparable harm: it destroys the exclusivity and commercial value of her property, permits Defendants to build an enterprise and raise capital on the strength of property they do not own, and makes any eventual accounting of damages speculative and impossible to compute. Monetary damages cannot restore Plaintiff's ownership rights or undo the harm to the value of the Pojano IP.

82. Plaintiff is likely to succeed on the merits of her ownership claims; she will suffer irreparable harm absent injunctive relief; the balance of hardships tips sharply in her favor, as Defendants' continued unpaid use of property they do not own is no legally protectable interest; and an injunction serves the public interest in enforcing intellectual property rights and preventing unjust enrichment.

83. Plaintiff is therefore entitled to a preliminary injunction, enjoining Defendants and their officers, agents, employees, and attorneys from any further unpaid use of the Pojano IP pending final resolution of this Action, and to a permanent injunction upon judgment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Lisa Abshire Pojano respectfully requests that this Court:

1) Enter judgment in her favor and against the corporate Defendants, and each of them, on Count I for breach of contract, in an amount not less than $58,466.46, or in the alternative $14,852.00 in cash together with the relief described in paragraph 6 below, together with the value of her uncompensated additional hours;

2) Enter judgment on Count II for breach of the implied covenant of good faith and fair dealing, including compensatory damages and, to the extent available under applicable law, punitive or exemplary damages;

3) Enter judgment on Count III for quantum meruit and unjust enrichment, in an amount not less than $80,000.00 and up to $2,000,000.00 for the Pojano IP, together with the reasonable value of Plaintiff's uncompensated services;

4) Enter judgment on Count IV for promissory estoppel, awarding Plaintiff the promised equity stake or its value;

5) Enter a declaratory judgment on Count V that Plaintiff owns the Pojano IP, that it is not work-made-for-hire, that no assignment exists, and that, in the alternative only, any license Defendants hold is at most implied, non-exclusive, non-transferable, and royalty-incurring;

6) In the alternative, impose a constructive trust on, and order specific performance of the delivery of, the 43,000 Class A units recognized on Defendants' capitalization summary, together with unit certificates, an operating agreement, Schedules K-1, and all distributions and appurtenant rights, and order a full accounting, and the vested founder-tier equity stake promised to Plaintiff;

7) Enter judgment on Count VII against Defendant Dominic Rapini individually for fraudulent inducement, awarding Plaintiff compensatory damages in an amount to be proven at trial but not less than $80,000.00, together with punitive damages in an amount sufficient to punish and deter;

8) Enter a preliminary injunction, upon such notice and hearing as the Court may direct, enjoining Defendants, their officers, agents, employees, attorneys, and all

persons in active concert or participation with them, from any further unpaid use of the Pojano IP pending final resolution of this Action;

9) Enter a permanent injunction upon judgment, permanently enjoining Defendants and all persons in active concert or participation with them from any further use of the Pojano IP absent a license from Plaintiff;

10) Order an accounting of all revenues and benefits derived by Defendants from the Pojano IP and from Plaintiff's services, and impose a constructive trust thereon for Plaintiff's benefit;

11) Enter all judgment awards against Defendants jointly and severally; and

12) Award Plaintiff her reasonable attorneys' fees to the extent permitted by law or contract;

13) Award pre-judgment and post-judgment interest at the maximum lawful rate;

14) Award Plaintiff her costs of this action; and

15) Grant such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable.

Respectfully submitted this 13th day of October, 2026,

s/ *Bernard S. Klosowski, Jr.*
Bernard S. Klosowski, Jr. (Fed. Id. No. 9251)
Stipkala & Klosowski, LLC dba
THRIVE IP® INTELLECTUAL PROPERTY LAW FIRM
200 N. Main Street, Suite 500
Greenville, SC 29601
(864) 351-2468 (phone)
Ben.Klosowski@Thrive-IP.com

ATTORNEYS FOR PLAINTIFF